**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LEONARD WILLIAMS, SR., etc.,**

        **Plaintiff,**

-vs-                                      Case No. 6:04-cv-815-Orl-31DAB

**MICHELIN NORTH AMERICA, INC.,**
**MICHELIN AMERICAS RESEARCH &**
**DEVELOPMENT CORPORATION, and**
**FORD MOTOR COMPANY,**
        **Defendants.**
_____/

# ORDER

This case arises out of an automobile accident in which Yvette Williams ("Williams") was killed. This matter comes before the Court on the Defendant, Ford Motor Company's ("Ford") Motion for Summary Judgment on the Plaintiff's Claim for Civil Conspiracy (Doc. 141), and the Plaintiff's Response thereto. (Doc. 147).

**I.    Introduction**

On February 8, 2002, Williams was driving her 1992 Ford Explorer on State Road 8, when her left rear tire, a P235/75R15 Uniroyal Laredo, manufactured by Uniroyal in early 1992,[1] experienced a partial tread separation. (Doc. 105, Att. 2 at 1-2; Doc. 141 at 2). Williams applied the brakes, after which the vehicle began to skid, rolled over, and came to rest in an upright position. (Doc. 141 at 2). Williams was ejected from the vehicle during the rollover, and died as a result of her injuries. (*Id.*).

---

[1] Michelin, as successor to Uniroyal, assumed responsibility for the manufacture of this tire.

In Count VII of the Complaint (Doc. 1), the Plaintiff asserts a claim against Ford for civil conspiracy, alleging that: (1) Ford had knowledge of the Ford Explorer's propensity to rollover under certain accident circumstances, including tire tread separations; (2) Ford, pursuant to a common design or scheme, acted overtly to conceal this information from the public, including consumers such as Williams; (3) this common design or scheme was done either to cause injury to Williams or to benefit Ford; and (4) Ford's acts were in the nature of a conspiracy.  (Doc. 1 at 12).

Ford has moved for summary judgment, arguing that the Plaintiff's claim for civil conspiracy must fail because: (1) the claim is barred by the intra-corporate conspiracy doctrine; and/or (2) the Plaintiff has not presented evidence of the existence of a conspiracy.  In response, the Plaintiff asserts that this case falls under the criminal conspiracy exception to the intra-corporate conspiracy doctrine, and that evidence of a conspiracy exists.

## II.     Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).[2]

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

**III.    Legal Analysis**

    A. Civil Conspiracy and the Intra-Corporate Conspiracy Doctrine

    *1) Civil conspiracy*

The essential elements of a civil conspiracy are: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some

---

[2] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

overt act in pursuance of the conspiracy, and (d) damage to the plaintiff as a result of the acts done under the conspiracy."[3] *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993); *see also Gellert v. Richardson*, 1995 WL 856715 at *2 (M.D. Fla. July 24, 1995) ("(1) an agreement or concerted action between two or more persons; (2) to participate in an unlawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) which overt act was done in furtherance of the common scheme"). "An actionable conspiracy requires an actionable tort or wrong."[4] *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999) (internal citation and quotation omitted). In bringing a claim of civil conspiracy, the plaintiff "must provide some factual basis for the legal conclusion that a conspiracy existed." *Id*. Thus, plaintiffs "may not simply aver that a conspiracy existed; [the defendant] must be put on notice as to the nature of the conspiracy alleged." *Id*. A conspiracy may, however, be proven by circumstantial evidence. *Dozier & Gay Paint Co., Inc. v. Dilley*, 518 So. 2d 946, 948 (Fla. 1st DCA 1988).

   *2) Intra-corporate conspiracy doctrine*

   The intra-corporate conspiracy doctrine holds that:

   acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put,

---

   [3] This tort is actionable "where a plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual could not possess." *Fla. Fern Growers*, 616 So. 2d at 565.

   [4] "The gist of an action for civil conspiracy is not the conspiracy itself, but the civil wrong done pursuant to the conspiracy which results in damage to the plaintiff." *Dozier & Gay Paint Co., Inc. v. Dilley*, 518 So. 2d 946, 949 (Fla. 1st DCA 1988).

> under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself.

*McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (internal citations and quotations omitted); *see also Lipsig v. Ramlawi*, 760 So. 2d 170, 180 (Fla. 3rd DCA 2000) ("Generally speaking, neither an agent nor an employee can conspire with his or her corporate principal or employer."); *Garrido v. Burger King Corp.*, 558 So. 2d 79, 81 (Fla. 3rd DCA 1990) ("A corporation cannot conspire with its own directors, officers or employees.").

The Plaintiff asserts that this case falls within the criminal conspiracy exception to that doctrine.[5] However, since this is not a criminal case, the criminal conspiracy exception is clearly inapplicable.[6] *See Carhart v. Smith*, 178 F. Supp. 2d 1048, 1066 (D. Neb. 2001) (intracorporate conspiracy doctrine would be inapplicable if case entailed criminal prosecution for conspiracy); *Foster v. Pall Aeropower Corp.*, 111 F. Supp. 2d 1320, 1325 (M.D. Fla. 2000) (criminal conspiracy exception would not apply where plaintiff neither alleged nor showed evidence of conspiracy sufficient to mandate application of the exception).

---

[5] "This exception states that the intracorporate-conspiracy doctrine does not apply to alleged intracorporate-criminal conspiracies." *Farese v. Scherer*, 342 F.3d 1223, 1232 n.10 (11th Cir. 2003).

[6] Indeed, in his Response, the Plaintiff appears to recognize as much. (*See* Doc. 147 at 17 (noting that Plaintiff's Complaint alleges a "civil conspiracy")).

Accordingly, because Ford cannot conspire with itself or with its employees, the Plaintiff's claim of civil conspiracy against Ford is barred by the intra-corporate conspiracy doctrine.

B. Ford and Firestone

Since Ford cannot conspire with itself, the Plaintiff suggests in his Response (but not in his Complaint) that Ford conspired with Firestone and, "by inference of circumstance," its successor -- Michelin -- to cover up the known defects in their respective products. (*See* Doc. 147 at 8, 10-11, 12, 16, 17). The "evidence" with which the Plaintiff purports to support this suggestion, however, consists at best of innuendo and insinuation. The documents refer only to communications between Ford and Firestone executives regarding the vehicle accidents involving Ford Explorers and Firestone tires. (*See* Doc. 147, Att. 12 at 1; Att. 13 at 1-2). Moreover, rather than Ford and Firestone being aligned in a joint effort (or, as the Plaintiff insists, a conspiracy), the evidence shows not only disagreements between Ford and Firestone, but outright antagonism between the two. (*See* Doc. 147, Att. 13 at 1 ("Firestone legal has some major reservations about the plan"); Att. 18 at 2 (noting that Firestone would vigorously fight a plan by which Firestone would assume the campaign costs); Att. 19 at 1-2 (noting that Ford personnel blamed Firestone for the problems); Att. 20 at 2 (same); Att. 22 (Ford document pointing out actions by Firestone that were "disturbing" and "clearly . . . not aligned with a joint communication strategy); Att. 25 at 3-4 (statement by Firestone executive indicating that Ford's testing was misleading and the Ford Explorer, not the Firestone tire, was to blame)). Indeed, rather than acting as co-conspirators, Ford and Firestone became opponents, each blaming the other publically for the rollover problem. Other evidence contains straightforward denials of any joint communication strategy. (*See* Doc. 147, Att. 23 at 1-2). Finally, although the Plaintiff presented a document containing allegations

-6-

that both Ford and Firestone knew of the safety issue and that both companies concealed information relating to the defects, (*see* Doc. 147, Att. 27 at 2), there is no specific evidence showing either that: (1) Ford and Firestone agreed to such concealment; or (2) either or both of them acted in furtherance of such an agreement.

Rather than providing concrete, or even clear circumstantial evidence of a conspiracy between Ford and Firestone, the Plaintiff has provided, at best, an amalgamation of dissimilar and unconnected documents, which the Plaintiff has attempted to link by loose intimations and implications.  At best, the information constitutes little more than, in the parlance of our time, a "conspiracy theory, " which is not sufficient to survive summary judgment.

## IV.     Conclusion

The Plaintiff's claim of civil conspiracy against Ford is barred by the intra-corporate conspiracy doctrine.  Further, the Plaintiff's attempt to demonstrate the existence of a conspiracy between Ford and Firestone must fail due to a lack of evidence from which such a conspiracy could be inferred.[7]  Accordingly, it is

---

[7] It is not clear how the Plaintiff's case is served by including a claim for civil conspiracy. There is no damage to the Plaintiff here as a result of the alleged conspiracy that would not be subsumed in the product liability tort itself.  If the evidence ultimately proves that Ford's (or Firestone's) product was defective, the Plaintiff can recover independent of any alleged conspiracy. Indeed, even if it were shown both that Ford's (or Firestone's) product was defective and that Ford (or Firestone) engaged in a conspiracy to conceal that defect, the ultimate damages from the defective product and the concealment would be the same, and thus any such damages would merely be duplicative.  If the product is found not to have been defective, however, the Plaintiff cannot have been injured by an alleged conspiracy to cover up non-tortious conduct.  In other words, it is the purported tort which allegedly caused the Plaintiff's damages, not the "conspiracy" to cover up that allegedly tortious conduct.

-7-

**ORDERED THAT** Ford's Motion for Summary Judgment (Doc. 141) as to Count VII is GRANTED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 21, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party